**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kevin Gunn, | No. CV 08-1039-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| James Tilton, et al., | |
| Defendants. | |

*Pro se* Plaintiff Kevin Gunn is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). At issue is Defendants' Motion for Summary Judgment ("Defs.' Mot.") (Doc. 31).[1] For the reasons that follow, Defendants' Motion for Summary Judgment is granted.

**I.     BACKGROUND**

On March 15, 2007, while Plaintiff was confined at the California Correctional Institution ("CCI") in Tehachapi, correctional staff searched the living areas of Dorm Six of Unit II, where Plaintiff was housed. (Pl.'s Statement of Genuine Disputed Facts in Supp. of Pl.'s Opp'n to Defs.' Mot. ("PSOF") ¶ 1; Defs.' Statement of Undisputed Facts in Supp. of

---

[1] The Court notes that both Plaintiff and Defendants have objected to portions of the evidence submitted by the opposing party. (Docs. 45, 52.) The Court does not rely on any of the objected to evidence in resolving the Motion for Summary Judgment.

Defs.' Mot. ("DSOF") ¶ 1.) The correctional officers searched the living areas of Dorm Six following a March 9, 2010, race riot in Dorms Five and Seven. (PSOF ¶ 1.)[2] Correctional staff conducted body searches of the inmates housed in Dorm Six and required the inmates to wear only their t-shirts, underwear and shower shoes before requiring the inmates to wait uncuffed on the grass in the exercise yard, wearing only their t-shirts, underwear and shower shoes. (DSOF ¶ 2-3; PSOF ¶ 2-3.) Plaintiff reports that he was forced to wait outside on the grass from 9 a.m. to 3 p.m. (DSOF ¶ 4; PSOF ¶ 4.) On the day of the search, the temperature at CCI from 9 a.m. to 3 p.m. was between 52 and 79 degrees. (DSOF ¶ 5; PSOF ¶ 5.)

Defendants assert that correctional staff, including Sergeant Stevens and Acting Captain Ramos, decided to have the inmates wait in the exercise yard because "they believed there was better security on the yard, the inmates would receive fresh air, and the temperature was not too warm." (DSOF ¶ 7.) Plaintiff asserts that Defendants "were not actually concerned with their [sic] being better security on the yard, the inmates receiving fresh air, or the temperature, because other dorms were searched after [D]orm [Six], including [Dorms Five and Seven, and the inmates] . . . were allowed to sit in the dining hall." (PSOF ¶ 7.) Lieutenant Crounse began his shift at 2 p.m. (DSOF ¶ 8; PSOF ¶ 8.) Defendants deny that Lieutenant Crounse was involved in the decision to have the inmates wait in the exercise yard. (DSOF ¶ 8 (citing Doc. 32, Evidence & Case Law in Supp. of Defs.'Mot., Ex. F, Crounse Decl. ("Crounse Decl.") ¶ 2).) However, Plaintiff asserts that Lieutenant Crounse was on Unit II prior to the beginning of his shift and ignored Plaintiff's requests to access water and use the restroom. (PSOF ¶ 8.) Defendants assert that Acting Warden Witcher did not make the decision to have the inmates wait in the exercise yard during the search. (DSOF ¶ 9.) Plaintiff asserts that Witcher had "actual knowledge of [P]laintiff and other inmates sitting in the grass with limited clothing on and no adequate protection from over exposure to the sun . . . [and that Defendant Witcher] did nothing to correct this when the inmates

---

[2] The Court regards as true the Plaintiff's evidence, if it is supported by affidavits or other evidentiary material. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

- 2 -

1 complained to him." (PSOF ¶ 9.)

2 During the search, Plaintiff did not have access to a restroom for three to four hours.
3 (DSOF ¶ 10; PSOF ¶ 10.) Plaintiff had to urinate on the grass in the exercise yard within
4 fifteen to twenty minutes of being forced outside. (DSOF ¶ 11; PSOF ¶ 11.) Plaintiff did not
5 have access to drinkable water during the entirety of the search, which lasted from 9 a.m. to
6 3 p.m. (DSOF ¶ 12; PSOF ¶ 12.) Plaintiff complained of sunburns at 3:30 p.m. after the
7 inmates were permitted to return to Dorm Six. (PSOF ¶ 13.)[3] Plaintiff was examined by
8 medical staff at 8:50 p.m. (PSOF ¶ 13.)[4]

9 Plaintiff's FAC asserts claims against Associate Warden M. Witcher, Acting Captain
10 J.D. Ramos, Lieutenant D. Crounse, and Sergeant Stevens. (FAC at 2-3.) Plaintiff alleges that
11 Defendants' conduct violated the Eighth Amendment's prohibition on cruel and unusual
12 punishment. (FAC at 13.)[5] Defendants move for summary judgment on Plaintiff's claims
13 asserting that Plaintiff was not subject to an extreme deprivation, Defendants were not
14 criminally reckless, and Defendants are entitled to qualified immunity. (Defs.' Mot. at 4-8.)

15 **II.    LEGAL STANDARDS AND ANALYSIS**

16     **A.    The Summary Judgment Standard**

17 The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
18 Civil Procedure. Under Rule 56, summary judgment is properly granted when: (1) no genuine
19 issues of material fact remain; and (2) after viewing the evidence most favorably to the
20 non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ.
21 P. 56; *Celotex*, 477 U.S. at 322-23; *Eisenberg*, 815 F.2d at 1288-89. A fact is "material"

---

[3] Defendants assert that Plaintiff complained of sunburns at 2:30 p.m. (DSOF ¶ 13.)

[4] Defendants assert that Plaintiff was examined at 7:50 p.m. (DSOF ¶ 16.)

[5] The Court recites the facts relevant to Plaintiff's remaining claims. In the Court's March 23, 2009, Order ("Screening Order"), the Court dismissed Plaintiff's claim that Defendants violated Plaintiff's Eighth Amendment rights by denying him "'appropriate clothing' while he walked from his dormitory to meals twice a day for five days." (Doc. 15, Screening Order at 4.)

when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

### B.     Violation of the Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment of persons convicted of a crime. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing U.S. Const. amend. VIII). In order to challenge the conditions of confinement in a prison, an inmate must show that prison officials acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, (9th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Demonstrating an Eighth Amendment violation requires a two-part showing. First, a plaintiff must make an "'objective showing' that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Johnson*, 217 F.3d at 731 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, a plaintiff must make a subjective showing that the prison official acted with "deliberate indifference," meaning that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

#### 1.     Plaintiff Did Not Suffer a Sufficiently Serious Deprivation

While "'deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation,'" the routine discomforts and deprivations inherent in prison settings do not give rise to Eighth Amendment violations. *Johnson*, 217 F.3d at 731 (quoting *Wilson*, 501 U.S. at 298). Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Id.* (citing *Farmer*, 511 U.S. at 832; *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred[, and] 'the more basic the need, the shorter the time it can be withheld.'" *Id.* (quoting *Hoptowit*, 682 F.2d at 1259).

Courts have found that substantial deprivations of adequate drinking water, shelter from extreme heat or cold, food, and sanitation for a significant period of time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See, e.g.*, *id.* at 732-33 (finding that prisoners asserted a sufficiently serious deprivation by alleging that prison officials held them outside without access to adequate shelter, water, food, or sanitation for four days when the temperatures ranged from 70 to 94 degrees and for 17 hours in sub-freezing temperatures); *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (noting that a "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment"). However, temporary deprivations of sanitation, water, and shelter that last only a short amount of time and do not pose a serious threat of harm to the prisoner do not give rise to deprivations that are sufficiently serious to support an Eighth Amendment claim. *See Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (finding that a five hour deprivation of water did not rise to the level of an Eighth Amendment violation); *Kanvick v. Nevada*, No. 3:08-CV-00397-ECR-VPC, 2010 WL 2162324, at *5-6 (D. Nev. Apr. 27, 2010) (noting "that a temporary deprivation of access to toilets, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation" and holding

- 5 -

that deprivation of access to restrooms lasting up to two hours was not sufficient to support an Eighth Amendment claim); *see also Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 676-78 (N.D. Ill. 2009) (finding that deprivations were not sufficiently serious where prisoners were detained in a prison yard while handcuffed without access to water, food, or toilets in 80 to 85 degree temperatures for up to five hours during a search of living quarters); *Curiel v. Stigler*, No. 06 C 5880, 2008 WL 904894, at *4-6 (N.D. Ill. Mar. 31, 2008) (same).

Here, Plaintiff did not suffer substantial deprivations of access to water, shelter, or sanitation. Plaintiff was detained outside for approximately six hours in temperatures that ranged from 52 to 79 degrees. (PSOF ¶¶ 4-5.) While Plaintiff was not given access to water for approximately six hours, or restrooms for three to four hours, these deprivations were temporary and the duration was not such that it posed a threat of serious physical harm or illness. *See Minifield*, 298 F. Supp. 2d at 904 (finding that a five hour deprivation of water did not rise to the level of an Eighth Amendment violation); *Kanvick*, 2010 WL 2162324, at *5-6 (noting that temporary deprivation of access to restrooms does not give rise to an Eighth Amendment claim in the absence of physical injury or risk of contamination).[6] In addition, while Plaintiff was exposed to the elements for six hours, the temperatures and conditions of the exposure were not sufficiently severe to result in a violation of Plaintiff's Eighth Amendment rights. *See Reyes v. Kirkland*, No. C 08-0813 SI (PR), 2010 WL 3398486, at *5-6 (N.D. Cal. Aug. 27, 2010) (finding that detaining a prisoner outside in cool temperatures for sixteen hours did not result in a deprivation sufficiently serious to warrant relief under the Eighth Amendment); *see also Hernandez*, 673 F. Supp. 2d at 676-78; *Curiel*, 2008 WL 904894, at *4-6.[7] The Court finds that the undisputed facts demonstrate that Plaintiff's

---

[6] The Court notes that the seriousness of a deprivation of access to water may depend on the duration of the deprivation and the severity of the weather. Here, depriving Plaintiff of water for six hours in temperatures ranging from 52 to 79 degrees was not sufficiently severe to support Plaintiff's Eighth Amendment claim.

[7] The Court notes that in some circumstances, such as those at issue in *Johnson v. Lewis*, the detention of prisoners outside without access to water or restrooms may give rise

1  detention in the prison exercise yard for six hours in 52 to 79 degree temperatures without
2  access to shelter or water and with only limited access to restrooms was not sufficiently
3  serious to form the basis for an Eighth Amendment violation. *See Johnson*, 217 F.3d at 731;
4  *see also Hernandez*, 673 F. Supp. 2d at 676-78; *Curiel*, 2008 WL 904894, at *4-6.

### 2. Plaintiff Has Not Shown That Prison Officials Acted With Deliberate Indifference

Even had the conditions that Plaintiff endured resulted in an objectively serious deprivation, Plaintiff has not satisfied the subjective component of an Eighth Amendment claim. While the conditions did result in deprivations of water, shelter, and restrooms for some period of time, nothing indicates that Defendants were aware of any conditions posing a substantial risk to Plaintiff's health or safety. *See Farmer*, 511 U.S. at 837. In addition, given the circumstances presented by the riot six days earlier and the perceived institutional need to search the inmates' living quarters, the evidence does not demonstrate that Defendants acted arbitrarily in depriving Plaintiff of access to water, shelter, and restrooms for several hours during the search. Defendants eventually permitted Plaintiff and other inmates to use the restrooms and provided water to Plaintiff and the other inmates upon their return to Dorm Six. (PSOF ¶¶ 10, 13.) Plaintiff did not complain of a sunburn while in the exercise yard and no evidence indicates that Defendants had notice of Plaintiff's medical concerns until after the inmates were permitted to return to Dorm Six, at which time

---

to Eighth Amendment violations. 217 F.3d at 731-33. However, in the instant case, Plaintiff's confinement in the exercise yard was for a markedly shorter period of time and in decidedly more mild weather conditions. Plaintiff's exposure to the elements lasted only six hours and occurred in 52 to 79 degree temperatures, whereas in *Johnson* the inmates were exposed to 70 to 94 degree temperatures for a period of four days and to sub-freezing temperatures for a period of seventeen hours. *Compare* PSOF ¶¶ 4-5, *with Johnson*, 217 F.3d at 729-30. In addition, in the instant case the deprivation of access to water and restroom facilities were for a much shorter duration. *Compare* PSOF ¶¶ 10-12 (Plaintiff did not have access to restrooms for three to four hours and did not have access to water for six hours), *with Johnson*, 217 F.3d at 729-31 (inmates did not have access to restrooms for an entire night and after that had access only to inadequate facilities, and inmates did not have access to water until well into the second day of their confinement in the exercise yard).

1 Defendants arranged for Plaintiff to receive a medical evaluation. (*Id.*)[8]

## III. CONCLUSION

The undisputed facts demonstrate that Plaintiff was not subject to a sufficiently serious deprivation and that Defendants did not act with deliberate indifference to an excessive risk to Plaintiff's health or safety. No genuine issues of material fact remain, and summary judgment is proper. Therefore, the Court grants Defendants' Motion for Summary Judgment.

**IT IS ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 31).

**IT IS FURTHER ORDERED** directing the Clerk to enter Judgment in favor of Defendants.

DATED this 22nd day of March, 2011.

_____
Susan R. Bolton
United States District Judge

---

[8] The facts asserted by Plaintiff demonstrate a six hour delay in medical treatment. (*Id.* ¶¶ 13-16.) Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To the extent Plaintiff's claims could be interpreted to assert a failure to provide medical care in violation of the Eighth Amendment, there is no indication that any Defendants were aware of a serious medical condition posing a substantial risk of harm to Plaintiff's health. *See Wilson v. Kernan*, No. CIVS040478GEBGGHP, 2006 WL 59512, at *3-6 (E.D. Cal. Jan. 10, 2006) (granting the defendants' motion for summary judgment where the plaintiff did not demonstrate that the defendants "knew that plaintiff was suffering from a serious medical problem related to heat exposure"). Defendants arranged for Plaintiff to receive medical attention, and Plaintiff received medical attention the same evening. (PSOF ¶¶ 13-16.)